UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS SANTS,<br><br>Plaintiff,<br><br>v.<br><br>DEPUTY MICHAEL SEIPERT, individually; COUNTY OF PLACER a government entity and municipality,<br><br>Defendants. | No. 2:15-cv-0355-KJM-CKD<br><br>ORDER |

Defendants Michael Seipert and County of Placer (collectively "defendants") move to dismiss, ECF No. 50, plaintiff Nicholas Sants' Second Amended Complaint ("SAC"), ECF No. 49. Plaintiff has opposed, ECF No. 51; defendants have replied, ECF No. 52. On November 16, 2018, the court heard oral argument on the motion. After consideration of the parties' arguments, and for the reasons set forth below, defendants' motion is GRANTED in part and DENIED in part.

I.  FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff brings this action under 42 U.S.C § 1983 for an incident on February 12, 2013 at the Squaw Valley resort in Placer County. SAC ¶ 8. The alleged facts of the incident are as follows: Deputy Seipert, a Sheriff's Deputy for the Placer County Sheriff's Office, was on patrol at the resort the day of the incident. *Id.* Deputy Seipert approached plaintiff and

1

announced he was under arrest for public intoxication. *Id.* When plaintiff inquired as to the cause of the arrest, Deputy Seipert became aggressive, pulled plaintiff's arm, then punched him in the face. *Id.* During the course of the arrest, plaintiff attempted to protect himself and repeatedly called for help. *Id.* Deputy Seipert then resorted to use of his billy club, but plaintiff trapped the club between his legs and eventually cast it aside beyond Deputy Seipert's reach. *Id.* Plaintiff never attempted to attack Deputy Seipert; he merely acted in self-defense in the face of an overly aggressive officer. *Id.* ¶ 9. These events exacerbated plaintiff's preexisting seizure disorder, of which he repeatedly informed both paramedics and police personnel. *Id.* ¶ 11. Based on these events, the Placer County District Attorney brought charges against plaintiff in the Superior Court of California, County of Placer, case number 72-008156B. *Id.* ¶ 13. On April 11, 2018, the case was tried before a jury and plaintiff was found guilty of section 148(a)(1) of the California Penal Code for resisting arrest, a misdemeanor; he was acquitted of all remaining charges. *Id.* ¶ 15; ECF No. 51 at 2.[1]

Plaintiff initiated this action on February 11, 2015, bringing ten claims for various violations under § 1983. ECF No. 1. In ruling on defendants' motion to dismiss the original complaint, the court dismissed plaintiff's municipal liability and state-law claims with leave to amend and stayed the case pending resolution of the underlying criminal action. ECF No. 11. Plaintiff was granted leave to amend within twenty-one days of the stay being lifted. *Id.* The stay has since lifted and plaintiff has amended his complaint,[2] bringing the following six claims against Deputy Seipert and the County of Placer: (1) excessive force, (2) false arrest, (3) malicious prosecution, (4) fabrication of false evidence, (5) conspiracy, and (6) failure to implement appropriate policies, customs and practices. *See generally* SAC. As noted, defendants move to dismiss, ECF No. 50, and the court resolves the motion here.

---

[1] ECF page cites refer to ECF pagination only, not internal document pagination.

[2] Shortly after filing the First Amended Complaint, the court granted plaintiff leave to file the Second Amended Complaint, which serves as the operative complaint here. *See* ECF Nos. 47, 48, 49.

2

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), quoted in *Twombly*, 550 U.S. at 555, to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

III. <u>DISCUSSION</u>

Defendants argue that in light of plaintiff's conviction for resisting arrest under section 148(a)(1) of the California Penal Code, claims One through Five are barred by the rule set forth in *Heck v. Humphrey*, 512 U.S. 477, 478 (1994). ECF No. 50-1 at 7–10. Plaintiff asserts that *Heck* is inapplicable under the Ninth Circuit's ruling in *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (en banc). ECF No. 51 at 5–6. The court evaluates each individual claim in turn.

    A.    <u>Claim One: Excessive Force</u>

The court finds *Heck* does not bar plaintiff's first claim for excessive force, as explained below.

In *Heck*, the Supreme Court explained:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486–87 (emphasis in original). Indeed, the "relevant question is whether success in a subsequent § 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence." *Smith*, 394 F.3d at 695 (quoting *Heck*, 512 U.S. at 487).

The Ninth Circuit, in *Smith v. City of Hemet*, considered the rule articulated in *Heck* as it related to a conviction under section 148(a)(1), the very provision on which plaintiff here was convicted. The court reasoned that "conviction for resisting arrest under section 148(a)(1) may be lawfully obtained only if the officers do not use excessive force *in the course* of making that arrest." *Smith*, 394 F.3d at 696 (emphasis in original). It is possible an

4

officer's conduct may be deemed excessive "*before* the officers commence the process of arresting the defendant," or "*after* a defendant has properly been arrested." *Id.* (emphasis in original). In essence, the court determined that events surrounding and including an arrest can be delineated into stages. So long as one stage in a sequence can justify a conviction under section 148(a)(1), then finding another point along the sequence to be excessive would not "necessarily imply" or "demonstrate" the invalidity of the underlying conviction. *Id.* at 698 ("There were two different phases of the officers' conduct here . . . . California law immunizes [plaintiff] from prosecution for any conduct that occurred at the time of, or during the course of his unlawful arrest, but it does not immunize him from prosecution for unlawful conduct that occurred prior or subsequent to that time.").

Six years after deciding *Smith*, the Ninth Circuit clarified its position in *Hooper v. Cty. of San Diego,* based on a California Supreme Court decision interpreting section 148(a)(1). 629 F.3d 1127 (9th Cir. 2011) (citing *Yount v. City of Sacramento*, 43 Cal. 4th 885 (2008)).[3] In *Hooper*, the court concluded:

> The Court's decision in *Yount* does not mean that our holding in *Smith* was wrong. But it does mean that our understanding of § 148(a)(1) was wrong. Section 148(a)(1) does not require that an officer's lawful and unlawful behavior be divisible into two discrete "phases," or time periods, as we believed when we decided *Smith*. It is sufficient for a valid conviction under § 148(a)(1) that at some time during a "continuous transaction" an individual resisted, delayed, or obstructed an officer when the officer was acting lawfully. It does not matter that the officer might also, at some other time during that same "continuous transaction," have acted unlawfully.

*Id.* at 1132. Bound by the California Supreme Court's interpretation of section 148(a)(1), *see Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009), and applying *Heck* to the facts before it, the *Hooper* court reasoned that because plaintiff's arrest was "one continuous transaction[,] [a] holding . . . that the use of the dog was excessive force would not negate the

---

[3] In *Yount*, the California Supreme Court specifically considered the applicability of *Heck* and *Smith* to section 148(a)(1) and found that *Heck* barred plaintiff's § 1983 claims to the extent the offending officer was not entitled to the use of force at all, but permitted his claims to the extent they challenged the officer's use of deadly force because it did not necessarily invalidate his conviction under section 148(a)(1). 43 Cal. 4th at 888–89.

5

lawfulness of the initial arrest attempt, or negate the unlawfulness of [plaintiff's] attempt to resist it." *Hooper*, 629 F.3d at 1133 (internal quotations and citations omitted). In other words, in the course of a continuous arrest sequence, two things can be true at once: (1) an officer can lawfully arrest a suspect for resisting arrest, and (2) he can also unlawfully use excessive force while doing so.

Here, plaintiff pleads facts sufficient to state a claim for excessive force against Deputy Seipert and survive a 12(b)(6) challenge. The complaint asserts Deputy Seipert approached and announced his intent to arrest plaintiff for public intoxication, but when plaintiff inquired why, Seipert "became aggressive, pulling hard at Mr. Sants [sic] arm before punching him in the face." SAC ¶ 8. During the scuffle, plaintiff attempted to protect himself and "repeatedly called for help." *Id.* When Deputy Seipert began to use his billy club, plaintiff trapped the club between his legs, then threw it "to the side where it could not harm Mr. Sants or be used against Officer Seipert." *Id.* Deputy Seipert acted "overly aggressive and abusive." *Id.* ¶ 9. Considering these allegations in light of *Hooper*, the facts as pled are consistent with a continuous sequence of events, at least some of which sufficiently state a claim under § 1983 for excessive force.

Defendants argue this case is factually similar to *Redon v. Jordan*, No. 13CV1765-WQH-KSC, 2017 WL 1155342, at *1 (S.D. Cal. Mar. 28, 2017). *See* ECF No. 50-1 at 9. In *Redon*, the court specifically considered *Hooper*, but found that the plaintiff's excessive force claim would "necessarily imply the invalidity of plaintiff's [section 148(a)(1)] conviction" because the jury was presented with "identical facts," and considered the question of excessive force in reaching their decision. *Rendon*, 2017 WL 1155342, at *10. This case is distinct from *Rendon* in two ways. First, the court in *Rendon* considered the issue on summary judgment, where an in-depth evidentiary determination could be made, including exploration of the record in the underlying criminal action. *Id.* ("The record demonstrates that the state court was presented with identical facts alleging excessive force . . . ."). Second, regarding the record before the court, this court has not been asked at this stage to take judicial notice of plaintiff's underlying criminal record; defendants cite only to California Criminal Jury Instruction 2656,

6

which sets forth the elements of a lawful arrest, and references elements of section 148(a)(1) as identified in caselaw. ECF No. 50-1 at 9. Nothing before the court clarifies whether plaintiff's state case considered particular facts such that a finding of excessive force here would necessarily imply the invalidity of plaintiff's conviction. The court need only consider, when reviewing plaintiff's claims as pled, whether those claims state a valid claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678. The court answers that question in the affirmative.

B. <u>Claims Two Through Five</u>

Because defendants focus the bulk of their argument on liability preclusion under *Heck*, they do not specifically address the sufficiency of plaintiff's other individual claims against Deputy Seipert and each claim's corresponding elements. *See generally* ECF No. 50-1, 52. Despite this shortcoming, the court may still examine the sufficiency of the claims sua sponte, and does so here. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6)."). Having considered the sufficiency of the remaining individual claims, the court concludes Claims Two through Five must be dismissed.

1. <u>Claim Two: False Arrest</u>

To state a claim for false arrest under § 1983, plaintiff must show "the arrest was without probable cause or other justification." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 918 (9th Cir. 2012) (quoting *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001)). "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *Id.* (quoting *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004)).

Here, plaintiff claims Deputy Seipert "intended to restrict Plaintiff's freedom of movement when he used excessive force upon him, falsely arrested him and placed him in handcuffs." SAC ¶ 23. Plaintiff further pleads Seipert "directly restricted" his movement and "illegally arrest[ed] the Plaintiff based on false allegations, without probable cause in violation of his Due Process rights under the Fifth Amendment to the United States Constitution." *Id.* ¶ 24. Because probable cause is an essential element of a false arrest claim, plaintiff's conviction under section 148(a)(1) inherently contradicts these allegations. *Id.* ¶ 15. Generally, a criminal

7

conviction arising from the same incident leading to a later civil suit establishes the existence of probable cause. *See, e.g.*, *Morton v. Plummer*, No. C 02-3658 WHA(PR), 2003 WL 716239, at *1 n.1 (N.D. Cal. Feb. 19, 2003) ("Because a conviction of the plaintiff following the arrest is viewed as establishing probable cause, the common law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested."); *cf. Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166 (9th Cir. 2011) ("[U]nder California law, the indictment itself created a *prima facie* presumption that probable cause existed for the underlying prosecution.") (internal quotations omitted). Additionally, a finding to the contrary here would create the very problem *Heck* sought to avoid because a lack of probable cause would "necessarily imply" or "demonstrate" the invalidity of the earlier conviction. *Heck*, 512 U.S. at 487. Therefore, because plaintiff's conviction under section 148(a)(1) establishes the existence of probable cause at the time of the arrest, eviscerating an essential element of plaintiff's claim for false arrest, this claim must be dismissed. And dismissal must be without leave to amend because any further amendment would be futile in light of the underlying conviction. *See Deveraturda v. Globe Aviation Security Services*, 454 F.3d 1043, 1049–50 (9th Cir. 2006) (holding leave to amend properly denied where amendment would be futile).

2. <u>Claim Three: Malicious Prosecution</u>

The same reasoning applies to Claim Three, as lack of probable cause is also an essential element of a malicious prosecution claim. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) ("In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.") (alterations in original and internal quotations omitted). For the same reasons discussed above under Claim Two, Claim Three must be dismissed without leave to amend because plaintiff's underlying conviction precludes a finding of lack of probable cause.

/////

/////

### 3. Claim Four: Fabrication of False Evidence

To support a deliberate-fabrication-of-evidence claim, a plaintiff

> must, at a minimum, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.

*Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012) (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)). This test, known as the *Devereaux* test, must be interpreted broadly, and courts must consider its underlying purpose. *See Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) ("The *Devereaux* test envisions an investigator whose unlawful motivation is illustrated by her state of mind regarding the alleged perpetrator's innocence, or one who surreptitiously fabricates evidence by using coercive investigative methods. These are circumstantial methods of proving deliberate falsification.").

Here, to support his claim, plaintiff contends Deputy Seipert "conspired to produce false statements that would be used in the criminal proceeding instituted against Plaintiff," and the County is responsible for Seipert's actions because "by reasonable investigation it knew or should have known of the fabrication of evidence by their agents and/or employees described herein." SAC ¶¶ 41–42. Despite the latitude afforded under *Devereaux*, the court finds these facts as pled insufficient to support a claim for fabrication of false evidence. The complaint does not allege Deputy Seipert or the County furthered the investigation despite knowing of plaintiff's innocence; nor does it allege with any specificity the use by Deputy Seipert or the County of coercive or abusive investigative techniques they knew would yield false information; nor is there mention of what evidence was actually fabricated. At hearing plaintiff's counsel conceded the complaint's insufficiency as to Claim Four, and provided no basis for the court allow a further opportunity to amend. For these reasons Claim Four is dismissed without leave to amend.

### 4. Claim Five: Conspiracy

"A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming

9

another which results in damage." *Lacey*, 693 F.3d at 935 (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999), *as amended on denial of reh'g* (July 15, 1999)). To prove conspiracy, plaintiff must show "a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.* "[E]ach participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* At the pleading stage, the complaint must include some factual basis to support an inference that the agreement propelled the defendant's actions. *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999). Vague claims that a defendant was involved in a conspiracy do not suffice. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) ("[Plaintiff] has failed to present any support for [her conspiracy] allegation or to clarify its meaning.").

Plaintiff claims Deputy Seipert "conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among other employees of Placer County to deprive Plaintiff of his constitutional rights by charging and encouraging prosecution against him on charges which they knew or should have known were not supported by probable cause." SAC ¶ 49. Even when viewed in plaintiff's favor, such vague, conclusory references to conspiratorial conduct cannot withstand a 12(b)(6) challenge. *See, e.g.*, *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (dismissing conspiracy claim where plaintiff "could allege no specific facts to show any agreement between . . . any of the named defendants"); *Trujillo v. Las Vegas Paving Corp.*, No. 2:08-CV-0936-RLH-LRL, 2010 WL 11578972, at *2 (D. Nev. Mar. 18, 2010) (dismissing conspiracy claim where plaintiff pleaded no facts explaining how conspiracy took place); *Dema v. City of Mesa*, 338 F. App'x 596, 597 (9th Cir. 2009) ("[C]onclusory allegations of conspiracies to violate [plaintiff's] civil rights and defame him are insufficient to support a claim for relief."). On this basis Claim Five will also be dismissed without further leave to amend; given that plaintiff previously has been unable to cure the pleadings any further attempt to amend would be futile. *See Deveraturda*, 454 F.3d 1049–50.

C. <u>Claim Six: Failure to Implement Policies, Customs and Practices</u>

Plaintiff has included Claim Six in the operative amended complaint, apparently in response to the court's observations made in its order on defendants' first motion to dismiss. ECF No. 11 at 7. In that order, the court concluded plaintiff's municipal liability claims were too conclusory to survive, but granted leave to amend based on new facts contained in plaintiff's opposition. *Id.* Plaintiff has incorporated those facts here. He states:

> Specifically, audio recordings on the night of MR. SANTS' arrest show systematic and total disregard for both the safety and the constitutional rights of MR. SANTS. Placer County employees, from dispatchers to Sheriff's deputies to medical personnel, at various times did not respond to MR. SANTS' calls for help when being beaten by DEPUTY SEIPERT or when attempting to get medical attention while in police custody.
>
> MR. SANTS was heard begging to be taken to the hospital by multiple Placer County Sheriff's Deputies, one of whom is heard on the police audio recording informing MR. SANTS that he is having a panic attack. The Deputy goes on to inform MR. SANTS that he has over a decade of medical training. Furthermore, the deputy volunteered in a pre-trial hearing that he, in fact, found MR. SANTS to be credible while he was in the throes of his panic attack, begging for medical attention. Despite that, every deputy made MR. SANTS wait to receive necessary attention.

SAC ¶ 58.

Additionally, plaintiff alleges the County implemented reckless policies, allowed employees to use excessive force, acted with deliberate indifference by failing to adequately train and supervise Deputy Seipert, and implemented policies that condoned and allowed Sheriff's Department employees to act in concert with other agencies in using excessive force and ignore probable cause requirements. *Id.* ¶¶ 56–58. Defendants contend this claim is barred for failure to plead the requisite causal link to properly state a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). ECF No. 50-1 at 13–14. Defendants also assert that to the extent plaintiff attempts to seek liability against the County on the first five claims based on a theory of respondeat superior, *Monell* explicitly precludes such liability. *Id.* at 11–12.

As a threshold matter, to the extent plaintiff does indeed attempt to impose liability on the County based solely on an employee-agent relationship with Deputy Seipert, such liability is prohibited. *Monell*, 436 U.S. at 690. More principally, however, as the court explained in the

11

order on defendants' first motion to dismiss, plaintiff can bring a *Monell* claim under any of three municipal liability theories: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

Unlike the original complaint, the Second Amended Complaint implicates both the first and second theories. By using language of "adopted and implemented careless and reckless policies . . . allowing employees . . . to engage in the use of excessive force," plaintiff triggers the first theory, while terms of "failure . . . to adequately train and supervise . . . amounts to deliberate indifference" implicate the second theory. SAC ¶¶ 56–57. The first theory ultimately can be established by proof of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & Cty. of S.F.*, 308 F.3d 968, 984–85 (9th Cir. 2002)). The second theory is established by showing the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Clouthier*, 591 F.3d at 1249 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Here, even according proper weight to plaintiff's allegations, the complaint fails to state a plausible claim under *Monell*. Plaintiff has presented no facts—no specific policy, training standard or formal understanding—showing the County engaged in a "longstanding practice or custom" that compelled its employees to deprive others of their constitutional rights. *See Price*, 513 F.3d at 966. Because the complaint stems from a narrow sequence of events, there must be more than bare references to negligent or indifferent behavior to show the existence of a longstanding practice or custom. *Id.*; c*f. Branch v. Cty. of San Diego*, No. 15-CV-2336 AJB KSC, 2018 WL 1942260, at *3 (S.D. Cal. Apr. 25, 2018) ("[T]he Court cannot extrapolate an

alleged failure to train one employee, involving a single incident, into a systemic problem resulting from a policy or custom of inadequate supervision and training.").

Plaintiff also fails to support the allegation that the need for training is "so obvious" the County's failure to meet that need amounts to "deliberate indiffer[ence]." *Clouthier*, 591 F.3d at 1249. For the court ultimately to reach the question of deliberate indifference, plaintiff must first point to the "[e]xistence of a program [to] make[] proof of fault and causation at least possible in an inadequate training case." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997). Plaintiff does not identify any such program in his allegations; he merely alleges very generally that the County "implemented careless and reckless policies, customs, or practices" that enabled its employees to act with deliberate indifference. SAC ¶¶ 56–58. For a municipality's "policy of inaction . . . [to be found] the functional equivalent of a decision by the city itself to violate the Constitution," a claim with such profound implications cannot be sustained by the type of summary and highly generalized allegations plaintiff brings here. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Claim Six must be dismissed for these reasons.

Plaintiff has been provided opportunity to amend based on the additional facts contained in his opposition to defendants' prior motion to dismiss. *See* ECF No. 7 at 3; ECF No. 11 at 7. Although he has incorporated the substance of his opposition now, *see* FAC ¶ 58, he has not included the level of specificity necessary to support a *Monell* claim. Having considered the operative complaint, plaintiff's opposition to the instant motion and counsel's representations at the motion hearing, the court finds any further opportunities to amend would be futile. *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (explaining district court's discretion when considering further leave to amend is "particularly broad" where opportunity to amend was already provided).

The consequence of dismissing Claim Six without leave to amend is that there is no longer any basis for finding the County liable. A municipal entity cannot be held liable under a respondeat superior theory, *Monell*, 436 U.S. at 691; liability must be predicated on a policy or custom, *Brown*, 520 U.S. at 403. Because Claim One for excessive force is the only surviving

claim, and plaintiff has failed to identify a policy or custom establishing the potential for County liability on that claim, the County of Placer must be dismissed from this action.

IV. CONCLUSION

In sum, the motion to dismiss, ECF No. 50, is GRANTED in part and DENIED in part. The motion is GRANTED as to Claims Two through Six, and those claims are DISMISSED in their entirety without leave to amend. The motion is DENIED as to Claim One. This matter will proceed on that claim as to Deputy Seipert, in his individual capacity, only. The Clerk of Court is directed to terminate the County of Placer from this action, as plaintiff has failed to sufficiently plead grounds for County liability. Deputy Seipert shall answer the complaint within 14 days of the date of this order.

IT IS SO ORDERED.

DATED: June 24, 2019.

_____
UNITED STATES DISTRICT JUDGE