UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS SANTS,<br><br>              Plaintiff,<br><br>    v.<br><br>MICHAEL SEIPERT, individually;<br>COUNTY OF PLACER, a government<br>entity and municipality; and DOES 1-10,<br>inclusive,<br><br>              Defendant. | No. 2:15-cv-00355-KJM-CKD<br><br>ORDER |

Nicholas Sants alleges that Office Michael Seipert used excessive force during an arrest. The matter is before the court on Seipert's motion for summary judgment, which is fully briefed. *See* Mot, ECF No. 63; Opp'n, ECF No. 65; Reply, ECF No. 66. The court held a hearing on September 5, 2020. Patricia Campi appeared for Mr. Sants, and Julia Reeves appeared for Officer Seipert. ECF No. 68. The court denies the motion, as explained below.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The court therefore summarizes the evidence here in the light most favorable to Mr. Sants. To be clear, the following is not a summary of

1

undisputed facts, but a description of what a fact-finder could reasonably conclude based on Mr. Sants's evidence.

On an evening in February, Mr. Sants was standing in front of the Auld Dubliner Bar at the Squaw Valley ski resort with four or five friends after attending the "Mardi Squaw" celebration. Pl.'s Resp. Undisputed Material Facts (UMF) No. 3, ECF No. 65-1. Mr. Sants had drunk "two or three" Coors Light beers over the course of the night. Sants Dep. at 5 (28:4–19),[1] Campi Decl. Ex. 1, ECF No. 65-2. Officer Seipert arrived in his patrol car, responding to complaints that patrons of the bar were singing or yelling loudly.[2] He focused on Mr. Sants and his group, yelling at them from his car to "shut the fuck up." *See* Andrews Dep. at 17 (16:12–13); Sants Dep. at 7 (33:4–8). Mr. Sants approached Officer Seipert, asking if something was wrong or he needed anything, but Seipert said no; Sants was free to go. Sants Dep. at 6 (31:8–20).

Mr. Sants then left. But when he was about 100 feet away, he felt someone grab him from behind. Sants Dep. at 6 (31:20–21); *id.* at 7 (34:2–21); *see also* Andrews Dep. at 18 (17:9–12). He spun out of the grip and away, not yet knowing it was Officer Seipert. Sants Dep. at 7 (34). It was at this point Officer Seipert first told Mr. Sants he was under arrest for public intoxication and to "stop resisting." UMF No. 14. Mr. Sants' friend attempted unsuccessfully to intervene. UMF No. 17. Then, after a brief moment when the two wrestled for control of Mr. Sants' arm, Officer Seipert began punching Sants in the head, and according to one witness, pulled Sants' shirt over his head and began throwing "upper cuts" like in "a hockey fight."[3] Officer Seipert

---

[1] Except as noted, the page numbers cited in this order are those printed by the court's CM/ECF system at the top right of each page. Page numbers cited in parentheses, if any, are those original to the cited document.

[2] *See* Seipert Decl. ¶ 6, ECF No. 63-3; Seipert Trial Test. at 5 (8:3–22), Reeves Decl. Ex. E, ECF No. 63-10; Jennings Dep. at 5 (26:11–22, 27:14–21), Reeves Decl. Ex. D, ECF No. 63-9; Andrews Dep. at 17 (16:12–13), Campi Decl. Ex. 3, ECF No. 65-2; Sants Dep. at 7 (33:4–8).

[3] *see* Sants Dep. at 8 (39:9–11); Pl.'s Interrog. Resp. No. 7, Campi Decl. Ex. 6, ECF No. 65-2; Andrews Dep. at 18 (19:8–23); Jennings Dep. at 12 (28:17–25), ECF No. 65-2; Jennings Trial Tr. at 24–25 (96:14–27, 97:1–5), Campi Decl. Ex. 4, ECF No. 65-2; Andrews Trial Tr. at 42 (118:2–8), Campi Decl. Ex. 7, ECF No. 65-2.
For the uninitiated, an upper-cut is an upwardly swinging blow thrown with a bent arm, often to the chin. *See* Merriam-Webster Online Dictionary, "uppercut," *available at* https://www.merriam-webster.com/dictionary/uppercut (last visited Jan. 19, 2021); *cf.* @barstoolsports, Twitter (Jan. 5, 2020, 11:30 AM).

1  then fell to the ground in an attempt to either tackle or punch Mr. Sants again; Sants at this point
2  was attempting to dodge or shield himself from the blows. *See* Andrews Dep. at 19 (22:2–24). A
3  crowd formed around the two men and began lobbing accusations of police brutality. UMF
4  No. 18. At some point, Officer Seipert drew his baton and attempted to strike Mr. Sants, but
5  Sants caught the baton, pulled it from Officer Seipert's grip, and threw it into the crowd. UMF
6  No. 24–25. Squaw Valley security then arrived and helped Officer Seipert restrain and arrest
7  Mr. Sants. UMF No. 29.

8  Since that evening in February, Mr. Sants has suffered from "traumatic brain injury
9  resulting in seizure disorder, hallucinations, paranoid behaviors, defects in concentration, post-
10 traumatic stress disorder, anxiety and depression." Pl.'s Interrog. Resp. No. 8. He also chipped a
11 tooth. *See id.* Officer Seipert also sustained a significant shoulder injury and was forced into
12 early retirement due to a related surgery. *See* UMF No. 31.

13 Mr. Sants was charged with two felony counts of resisting an executive officer under
14 California Penal Code section 69, one felony count of injury to an officer in the course of their
15 duties under California Penal Code section 148.10, and one misdemeanor count of public
16 intoxication under California Penal Code section 647(f). At the same time, Mr. Sants filed this
17 suit, which was stayed pending the completion of the criminal case. *See* Stay Order (Sept. 3,
18 2015), ECF No. 11. At his criminal trial, a jury found Mr. Sants guilty of a single count of a
19 lesser included charge: resisting a peace officer under California Penal Code section 148(a)(1).
20 *See generally* Excerpts of Jury Instructions & Verdict, Reeves Decl. Ex. G, ECF No. 63-12. This
21 action then resumed and is now proceeding on just one claim of unconstitutional excessive force
22 against Officer Seipert under 42 U.S.C. § 1983. *See* Order on Mot. Dismiss, ECF No. 59.
23 /////
24 /////
25 /////
26 /////
27
28 https://twitter.com/barstoolsports/status/1213905613085970432

## II.     LEGAL STANDARD

A court may grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," or conversely "whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 251–52 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis omitted).

As noted above, in deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

/////

/////

/////

4

**III.   DISCUSSION**

Officer Seipert contends he is protected by qualified immunity and, in the alternative, that Mr. Sant's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Mot. at 3–9.  The court addresses these arguments in turn.

**A.   Qualified Immunity**

"Qualified immunity is a judge-made doctrine designed to 'balance[] two important interests—the need to hold public officials accountable when they exercise power irresponsible and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011) (alteration in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Qualified immunity is intended to "give[] government officials breathing room to make reasonable but mistaken judgements about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Courts follow a two-pronged test in determining whether qualified immunity applies at summary judgment: first, the court determines whether the evidence in the record can support a claim that defendant violated plaintiff's constitutional rights.  *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Then, "if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citing *Saucier*, 533 U.S. at 201).  If the right violated by the official's conduct was not "clearly established," then the officer is protected by qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Courts may begin with either of these prongs, but it is "often beneficial" to begin with the first. *Pearson*, 533 U.S. at 236.  That is true here.

1.   **Violation of a Constitution Right**

Police officers violate an individual's Fourth Amendment rights when they use excessive force during an arrest.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989).  Such claims are assessed using an "objective reasonableness standard." *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005).  "[R]easonableness is generally assessed by carefully weighing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *County of Los Angeles*

1  *v. Mendez*, 137 S. Ct. 1539, 1546 (2017) (internal quotation omitted).  The government interest in
2  use-of-force cases is evaluated from "the perspective of a reasonable officer on the scene."
3  *Graham*, 490 U.S. at 396.  Here, the court "must consider the risk of bodily harm that [Officer
4  Seipert's] actions posed to [Mr. Sants] in light of the threat to the public that [Officer Seipert] was
5  trying to eliminate."  *Scott v. Harris*, 550 U.S. 372, 382 (2007).

6  Viewing the evidence in a light most favorable to Mr. Sants, the risk of harm created by
7  the Officer Seipert's force was high.  Mr. Sants and other witnesses believed Officer Seipert was
8  attempting to break Mr. Sants' arm and saw him hit Sants in the head as if the two were in a
9  hockey fight, all without plaintiff's actively fighting back.  *See* Jennings Dep. at 12 (28:8–16);
10 Sants Dep. at 7–8 (36:3–37:24); Andrews Dep. at 16–17 (16:11–20:3), ECF No. 65-2.  It is
11 undisputed that Officer Seipert's blows caused a severe head injury, which placed Mr. Sants on
12 permanent disability.  A reasonable jury could find this use of force to be extreme.  *See Davis v.*
13 *City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) (slamming suspect's head into wall and
14 punching him in head was "extremely severe"); *see also Vivero v. City of Merced Police Dept.*,
15 No. 08-1751, 2009 WL 3625385, at *6 (E.D. Cal. Oct. 29, 2009) (repeated blows to head of
16 suspect who was not actively fighting back were excessive).

17 On the other side of the scale, the asserted governmental interest, and Officer Seipert's
18 interests as a uniformed police officer, are twofold.  First, he had an interest in defending himself
19 from Mr. Sants.  Second, he had an interest in preventing the crime he believed Sants was
20 committing.  The court addresses each of these in turn.

21 The danger to Officer Seipert stemmed, in his own words, from Sants's spinning to face
22 him.  Seipert Decl. ¶ 17.  But Sants was unarmed and—if the evidence is considered in the light
23 most favorable to his case—posed little or no threat to Officer Seipert or to anyone else.  The act
24 of spinning in an officer's grasp and similar reactive defensive movements do not alone
25 demonstrate a danger to an arresting officer or anyone else.  *See Davis*, 478 F.3d at 1052, 1055–
26 56 (finding no immediate threat in handcuffed suspect rotating away from arresting officer to
27 prevent seizure of his wallet after he ignored repeated orders and shouted expletives); *see also*
28 *Schroeder v. County of San Bernardino*, No. 18-427, 2019 WL 3037924, at *7 (C.D. Cal. Mar. 8,

2019) (finding minimal danger in plaintiff's attempt to pull away from officer's grasp during traffic stop). Recently, considering a very similar situation, an Oregon district court found that even tripping a suspect and taking him "to the ground" could be an excessive response to the suspect's "spinning towards [the officer] and attempting to pull away." *Stauffer v. City of Newberg,* No. 17-01295, 2020 WL 1861675, at *10 (D. Or. Mar. 20, 2020). Officer Seipert does not argue that Sants's friend's attempted interference escalated the situation. Sants's successful attempt to disarm Officer Seipert of his baton followed Officer Seipert's repeated blows and so cannot justify those blows. A reasonable jury could thus find Mr. Sants presented little or no threat to Officer Seipert.

The severity of Mr. Sants's suspected crimes offers little support for the force Officer Seipert used, viewing the evidence again in the light most favorable to Mr. Sants. As summarized above, a jury could reasonably find that Sants was loudly drinking in public with friends and others, but not that he was violent, armed or posed a danger to others. A reasonable officer in Seipert's situation could therefore suspect only a relatively minor offense, such as rowdiness, public intoxication or verbal abuse. Public intoxication and similarly minor offenses might justify some force, but not force like that used here. In *Onyenwe v. City of Corona*, for example, the district court denied summary judgment to officers who yanked a man suspected of public intoxication out of his car, shoved him and pushed him, and slammed him against the side of the car. *See* No. 12-01363, 2013 WL 12169375, at *10–14 (C.D. Cal. Dec. 1, 2013). The Ninth Circuit agreed in an unpublished memorandum disposition, noting that public intoxication is only a "minor crime." *See* 637 F. App'x 370 (9th Cir. 2016). In *Winterrowd v. Nelson*, the circuit affirmed the district court's decision that officers were not entitled to qualified immunity after they slammed a nonviolent, unarmed man into a car and twisted his arms behind his back. *See* 480 F.3d 1181, 1182–83, 1184–86 (9th Cir. 2007). It made no difference that the officers found a firearm in the car or that the man had a "belligerent attitude." *See id.* Similarly, officers were not acting proportionally when they beat a suspect to the point of unconsciousness for spray painting a police car and attempting to drive away in *Vivero v. City of Merced Police Department*, even though a crowd had gathered, No. 08-1751, 2009 WL 3625385, at *6–7 (E.D. Cal. Oct. 29, 2009).

1 But even if it were reasonable for an officer in Seipert's shoes to conclude that Sants was
2 obstructing justice, that conclusion would not justify Seipert's force.  Obstruction of justice is "by
3 no means such [a] serious offense[] as to provide an officer with reasonable basis for subduing a
4 person" with intense physical force, including repeated blows to the head.  *Davis*, 478 F.3d
5 at 1055.

6      In sum, weighing the amount of force used and the government's interest, a reasonable
7 jury could conclude the force was excessive.

8      Officer Seipert argues otherwise, relying on the testimony of his retained expert, Retired
9 Sergeant Edward Flosi, who opines that Officer Seipert's force was reasonable.  Mot. at 5–7; *see*
10 *also* Flosi Rep. at 26–37, ECF No. 63-7.  Sergeant Flosi's opinions may prove persuasive to a
11 jury, but his opinions do not resolve factual disputes, and at this stage of the proceedings he
12 cannot take the jury's place in deciding what occurred and what force was reasonable.  "[T]he
13 jury," not an expert, "is best suited to determine the reasonableness of an officer's conduct in
14 light of the factual context in which it takes place."  *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th
15 Cir. 1994).  Crediting Flosi's testimony would also give his judgment essentially controlling
16 weight in applying the law to the facts of this case, which is a question for the jury, not an expert.
17 *See United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017).

18         2.    **Clearly Established Law**

19      Constitutional violation notwithstanding, if a reasonable officer would not have known
20 that the force used here was excessive, then Officer Seipert is immune to civil suit.  A
21 hypothetical "reasonable officer" is charged with awareness of only "clearly established law."
22 *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017).  "[P]olice officers are entitled to qualified
23 immunity unless existing precedent 'squarely governs' the specific facts at issue."  *Kisela v.*
24 *Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13
25 (2015) (per curiam)).  However, "[p]recedent involving similar facts can help move a case
26 beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide
27 an officer notice that a specific use of force is unlawful," *id.* (quoting *Mullenix*, 136 S. Ct. at 312),
28 and "a general constitutional rule already identified in the decisional law may apply with obvious

1    clarity to the specific conduct in question, even though 'the very action in question has [not]
2    previously been held unlawful,'" *Bonivert v. City of Clarkston*, 883 F.3d 865, 872 (9th Cir. 2018)
3    (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

4          Here, Officer Seipert is not entitled to qualified immunity. When he encountered Mr.
5    Sants in 2013, it was clearly established that officers may not strike nonviolent, unarmed people
6    who pose little or no threat of harm, who do not attempt to flee, and who are suspected of only
7    minor crimes. That is apparent in the appellate decisions summarized above, which were both
8    issued several years before 2013. *See Winterrowd*, 480 F.3d at 1182–83, 1184–86; *Davis*,
9    478 F.3d at 1052, 1055–56. Other decisions had also clearly establishing these rights. In
10   *Blankenhorn v. City of Orange*, the circuit held similarly that officers used excessive force when
11   they struck a suspect whose arms were pinned beneath him even though he had resisted at first.
12   *See* 485 F.3d 463, 480 (9th Cir. 2007). This right, the circuit held, was clearly established by
13   *Graham* itself in 1989. *See id.* at 481 ("[W]e need look no further than *Graham's* holding that
14   force is only justified when there is a need for force."). In *Meredith v. Erath*, the circuit affirmed
15   the denial of qualified immunity to an officer who threw a woman to the ground, twisted her arms
16   and tightly handcuffed her because the suspected offenses were nonviolent and the woman neither
17   posed a safety risk nor attempted to flee. 342 F.3d 1057, 1061 (9th Cir. 2003). These rights were
18   clearly established by a 1989 decision. *See id.* (citing *Hansen v. Black*, 885 F.2d 642, 645 (9th
19   Cir. 1989)). The circuit has reasoned similarly in its recent unpublished dispositions as well. *See,*
20   *e.g.*, *Orr v. Brame*, 727 F. App'x 265, 268 (9th Cir. 2018) (unpublished) (holding that officers
21   violated rights clearly established by *Blankenhorn*, *Winterrowd* and *Meredith* when they punched
22   a man after he "fold[ed] his arms across his chest and twist[ed] his torso from side to side"
23   defensively); *Branscum v. San Ramon Police Dept.*, 606 F. App'x 860, 863 (9th Cir. 2015)
24   (unpublished) (holding that use of force including punches and taser on individual who had led
25   police on long police chase, then briefly resisted officers' attempts to handcuff him, violated law
26   clearly established by *Graham* and *Blankenhorn*).

27         In sum, when the evidence is viewed in the light most favorable to Mr. Sants, as it must be
28   at summary judgment, any reasonable officer in Officer Seipert's position would have known that

1   repeatedly striking Mr. Sants in the head would be an excessive use of force. Officer Seipert is
2   therefore not entitled to qualified immunity at this stage. *See S.R. Nehad v. Browder*, 929 F.3d
3   1125, 1140 (9th Cir. 2019).

### B.   *Heck v. Humphrey*

Defendant also requests the court revisit its decision that *Heck v. Humphrey*, 512 U.S. 477 (1994), does not bar Sants's claim of excessive force. *See* Order on Mot. Dismiss at 4–7. A district court has inherent authority to reconsider its interlocutory orders. *See* Fed. R. Civ. P. 54(b); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). Reconsideration is ordinarily appropriate only when controlling law has changed, if new evidence has become available, or when necessary to correct a clear error or prevent manifest injustice. *See Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009). "In the absence of new evidence or a change in the law, a party may not use a motion for reconsideration to raise arguments or present new evidence for the first time when it could reasonably have been raised earlier in the litigation." *Id.* This District's local rules also require a party requesting reconsideration to explain "what new or different facts or circumstances are claimed to exist which did not exist or were not shown" or "what other grounds exist for the motion" and "why the facts of circumstances were not shown at the time of the prior motion." E.D. Cal. L.R. 230(j).

Here, Officer Seipert claims the jury instructions used in Mr. Sants' criminal case, now made part of the record here, override the court's previous decision that it is possible to conclude that Officer Seipert used excessive force without contradicting the jury's findings in the criminal case against Sants. *See* Order on Mot. Dismiss at 6. At the hearing on Officer Seipert's current motion in this court, his counsel argued the jury instructions in his criminal case explicitly asked the jury to decide whether Officer Seipert used excessive force at any time during the encounter. This argument is based on reasoning expressed, for example, in *Redon v. Jordan*, No. 13-1765, 2017 WL 1155342, at *9 (S.D. Cal. Mar. 28, 2017), which Officer Seipert emphasizes in his moving papers. *See* Mot. at 8–9. In *Redon*, the court held that *Heck* barred the plaintiff's § 1983 excessive force claim because a jury had already decided the plaintiff had resisted a lawful arrest,

1   and lawfulness implies reasonable force. *See* 2017 WL 1155342 at *9 (citing *Susag v. City of*
2   *Lake Forest*, 94 Cal. App. 4th 1401, 1409 (2002)).

3   The jury instructions from Mr. Sants's criminal case do not bear that argument out. First,
4   they instruct the jury that it could convict Mr. Sants of resisting a peace officer only if, among
5   other things, (1) Officer Seipert was "lawfully performing or attempting to perform his duties"
6   and (2) Sants resisted Officer Seipert "in the performance of or the attempt to perform his duties."
7   Jury Instructions at 3. Later on, the instructions explain that an officer is not "lawfully
8   performing his or her duties if he or she is . . . using unreasonable or excessive force in his or her
9   duties." *Id.* Together, these instructions informed the jury in Mr. Sants's criminal case it could
10  convict him only if it determined that at the time Sants resisted (if at all), Officer Seipert was
11  using reasonable force. The jury instructions in the criminal case thus permit two factual findings
12  that could support an excessive force claim here: (1) Officer Seipert used excessive force at some
13  other point in the exchange or (2) although some force was reasonable, and although Sants
14  resisted, Officer Seipert responded unreasonably.

15  This conclusion comports with the Ninth Circuit's and California Supreme Court's
16  interpretation of section 148 of the California Penal Code. The Ninth Circuit previously has
17  concluded that "a conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim
18  for excessive force under *Heck* when the conviction and the § 1983 claim are based on different
19  actions during 'one continuous transaction.'" *Hooper v. County of San Diego*, 629 F.3d 1127,
20  1134 (9th Cir. 2011). In *Hooper*, this meant the plaintiff's § 1983 claim, which was based on
21  excessive biting by a police dog, was not barred by *Heck* even though the plaintiff had pleaded
22  guilty to violating section 148(a)(1) by jerking her hands away from the officer before the dog
23  attacked. *See id.* at 1129.

24  The California Supreme Court reasoned similarly in *Yount v. City of Sacramento*, 43 Cal.
25  4th 885 (2008). The plaintiff had resisted an arrest for drunken driving, but during the scuffle, an
26  officer had shot him. *See id.* at 890–91. He survived and pleaded no contest to resisting arrest,
27  then sued the officer and city for excessive force. *See id.* at 891. The state supreme court
28  permitted him to pursue a § 1983 claim of excessive force despite his conviction because a

11

1   finding of excessive force would not necessarily prove that no force was reasonable in the
2   circumstances or that the arrest was "unlawful." *See id.* at 899–900.  "For example, a defendant
3   might resist a lawful arrest," the court explained, and "the arresting officers might respond with
4   excessive force to subdue him." *Id.* at 899 (quoting *Jones v. Marcum*, 197 F. Supp. 2d 991, 1005
5   n.9 (S.D. Ohio 2002)).  If this were not so, "police subduing a suspect could use as much force as
6   they wanted—and be shielded from accountability under civil law—as long as the prosecutor
7   could get the plaintiff convicted on a charge of resisting." *Id.* at 900 (quoting *VanGilder v. Baker*,
8   435 F.3d 689, 692 (7th Cir. 2006)).

9   Here, a jury could find that although some force might have been reasonable and a
10  forceful arrest therefore "lawful," Officer Seipert used excessive force because he struck Mr.
11  Sants several times in the head.  A jury could also decide here that Sants did not resist at first, but
12  later fought back reasonable attempts to restrain him.  In neither scenario would these conclusions
13  contradict the jury's finding in the criminal case that Mr. Sants resisted a "lawful" arrest.[4]  In
14  sum, because the jury instructions, and thus the jury's verdict in the criminal case, do not negate
15  the possibility that Officer Seipert used excessive force during the encounter with Mr. Sants, the
16  court declines to revisit its previous analysis.

17  Plaintiff's excessive force claim is not barred by his section 148(a)(1) conviction, and the
18  motion for summary judgment in this respect is denied.

19  **IV.   CONCLUSION**

20  Defendant's motion for summary judgment is **denied**.  The motion based on qualified
21  immunity is denied without prejudice to a renewed motion for qualified immunity at trial and
22  defendant's proposing the use of a special verdict form requesting specific findings to support
23  revisiting qualified immunity.

24  A status conference re trial setting is set for **August 5, 2021 at 2:20 p.m**.

25  /////

---

[4] To the extent this reasoning conflicts with the Southern District court's decision in *Redon*, 2017 WL 1155342 at *9, this court concludes it is bound by the Ninth Circuit's contrary application of *Heck* in *Hooper* and the California Supreme Court's contrary interpretation of Penal Code section 148(a)(1) in *Yount*.

**Within fourteen days**, the parties shall meet and confer and file a joint statement informing the court (1) whether any party objects to referral to a settlement conference before the assigned magistrate judge or another judge of this court; (2) whether the parties stipulate to conducting a trial in this matter by remote means; and (3) if any party has demanded a jury trial, whether the parties stipulate to withdrawing that demand and conducting a bench trial.

This order resolves ECF No. 63.

IT IS SO ORDERED

DATED: February 9, 2021.

CHIEF UNITED STATES DISTRICT JUDGE